UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-3905(DSD/JJG)


Jeffrey A. Arndt,

          Plaintiff,

v.                                                    **ORDER**

Washington County Sheriff's
Deputies Scott Stillman,
Dani Erickson, Wayne Johnson,
& the following persons known
to the Plaintiff only by their
last names and badge numbers:
Kurtz (109) & Stutz (147) in
their individual Capacity,

          Defendants.


     Felix J. Sahlin, Esq., Lakes & Plains Building, Suite
     200, 842 Raymond Avenue, St. Paul, MN 55114, counsel for
     plaintiff.

     Scott T. Anderson, Esq. and Ratwick, Roszak & Maloney,
     730 Second Avenue South, Suite 300, Minneapolis, MN
     55402, counsel for defendants.


     This matter is before the court upon defendants' motion for

summary judgment.  Based upon a review of the file, record and

proceedings herein, and for the reasons stated, the court grants

defendants' motion.


**BACKGROUND**

     On August 29, 2002, defendant Washington County Sheriff's

Deputy Scott Stillman applied for and received a warrant to search

the residence of plaintiff Jeffrey A. Arndt.  Shortly thereafter,

Deputy Stillman executed the warrant with the assistance of defendants Washington County Sheriff's Deputies Danelle Erickson, Wayne Johnson, Jesse Kurtz and Marvin Stutz.[1]  Arndt was physically restrained while his residence was searched but he was not taken into custody or arrested.   Arndt now brings this civil rights action under 42 U.S.C. § 1983[2] for the alleged deprivation of his constitutional rights.

On August 26, 2002, the Washington County Sheriff's Office TipLine received an anonymous report that an unidentified male was torturing juvenile females.   The report explicitly detailed sadomasochistic activities that the man engaged in with girls whom he had convinced to move into his house.   (See Stillman Aff. Ex. 1.)   Deputy Stillman contacted the anonymous source via e-mail to investigate the report.   In response to Deputy Stillman's e-mail,

---

[1]  Pursuant to the parties' stipulation, the court has entered judgment dismissing the complaint as to defendants Washington County Sheriff James Frank and Deputies Carla Cincotta, Scott Malinowsky, Brent Olson, Craig Olson, Mike Bonn, Mike Lindhom, Richard Peterson and Lonnie Van Klei.  Accordingly, the court also hereby dismisses count IV of the complaint which contains allegations solely against James Frank.

[2]  The statute provides that "[e]very person who, under color of [law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...."  42 U.S.C. § 1983.

Minda Kay Schleicher telephoned Deputy Stillman and identified herself as the anonymous source and identified the alleged male as Arndt.

Schleicher further informed Deputy Stillman that the basis of her knowledge was that she had known Arndt as a friend for over seven years and had personally observed and engaged in his sadomasochistic activities.  She stated that the reason she decided to report Arndt was due to her concern that the violent nature of his sadomasochistic activities was increasing and that he was progressively becoming more interested in young girls. Specifically, Schleicher was concerned that eventually Arndt would either severely injure or kill a juvenile girl.

Schleicher explained that her recent concern arose when she met a seventeen-year-old girl and a sixteen-year-old girl who were living with Arndt during the summer of 2002.[3]  Schleicher told Deputy Stillman that she had personally observed Arndt torture and engage in sadomasochistic sessions with the two minors and that some of the sessions were photographed.  Although those two girls had since left Arndt's residence to return to school, according to Schleicher, Arndt was looking for a fifteen-year-old girl to live

---

[3]  The court notes the factual dispute in the record as to the identity and age of the females who lived with Arndt during the summer of 2002.  (See McFarland Aff. ¶ 2; Johnson Aff. Ex. 5.) However, those facts are not relevant to plaintiff's claims. Therefore, the court does not entertain plaintiff's challenges as to the veracity of Schleicher's allegations.

with him and become his new "sex slave."  She also detailed the manner in which Arndt contacted potential sexual partners online. Schleicher told Deputy Stillman that she had created a fictitious online screen name under which she had posed as a fifteen-year-old girl and had engaged in sexually explicit online conversations with Arndt.  Schleicher claimed to have created the screen name and printed the online conversations as a way to document Arndt's behaviors and motives for authorities.

Deputy Stillman was familiar with Arndt and had previously investigated him on two occasions in response to allegations that he was torturing women.  Following their telephone conversation, Deputy Stillman arranged for Deputies Erickson and Johnson to separately and personally interview Schleicher.  During those interviews Schleicher reiterated and elaborated on much of the information provided to Deputy Stillman.  Both Deputies Erickson and Johnson found Schleicher to be credible.  Schleicher informed Deputy Erickson as to the precise location of boxes of photographs and nine computers in Arndt's residence.  She also provided Deputy Erickson with corroborating printouts of numerous sexually explicit e-mails and online conversations that took place between a fifteen-year-old girl and an adult male.  (See Erickson Aff. Ex. 2.) Schleicher claimed that the people involved in those conversations were Arndt and herself, but that Arndt was of the impression that he was talking to a fifteen-year-old girl.  Deputy Erickson had

previously investigated Arndt in 1998 based on a report of violent sadomasochistic activity and found that the information provided by Schleicher was consistent with the alleged 1998 conduct. Schleicher provided Deputy Johnson with a diagram of Arndt's residence and identified where authorities could locate various sadomasochistic paraphernalia.  Both Deputies Erickson and Johnson documented the content of their respective interviews in a police report and relayed the information to Deputy Stillman.  (See Erickson Aff. Ex. 3; Johnson Aff. Ex. 5.)

Deputy Stillman received the printouts of the online conversations that Schleicher had provided to Deputy Erickson.  He viewed the online profiles attached to the user names involved in the instant messaging and, based on the picture and biographical data, confirmed that the relevant profile and photograph belonged to Arndt.  Deputy Stillman then conducted a criminal history background check on Schleicher using the FBI's National Crime Information Center database and the Minnesota Bureau of Criminal Apprehension database, both of which revealed no previous criminal history.  (See Stillman Aff. Ex. 4.)  He further verified that she had no prior contact with Washington County Law Enforcement.

Based on the information provided by Schleicher, the interviews conducted by Deputies Erickson and Johnson, the results of the criminal background checks and his personal verification that the profile used in the online conversations belonged to

Arndt, Deputy Stillman applied for and received a "knock-and-announce" search warrant for Arndt's residence. (See Stillman Aff. Ex. 6.)  To execute the warrant, Deputy Stillman obtained the assistance of Deputies Erickson, Johnson, Kurtz, Stutz and others. Once at Arndt's residence, Deputy Kurtz knocked either once or twice on the front door and announced the deputies' presence and that they had a search warrant.  Arndt was in the basement at the time and did not respond because he did not hear any knocking. Following a period of no response that lasted between twenty to sixty seconds, Deputy Stutz breached the front door using a battering ram.  Arndt claims to have first become aware of the deputies' presence when he heard the door being breached.

Upon entering the house, Deputy Johnson went directly downstairs and located Arndt.  According to Arndt, Deputy Johnson did not identify himself as a police officer, had his weapon drawn and ordered him to get down to the ground.  Arndt did not respond. Deputy Johnson then physically forced Arndt to the ground and handcuffed him.  Arndt claims that a gun was held to his head the entire time he was being handcuffed.  Once handcuffed, Deputy Johnson searched Arndt for weapons.  Arndt was then assisted to his feet and placed on a couch  while the deputies proceeded to search his residence.  Arndt was not arrested.  However, officers did seize numerous items including computers, camera equipment and various sadomasochistic paraphernalia. (See Stillman Aff. Ex. 8.)

6

Plaintiff ultimately pleaded guilty to knowingly participating in an obscene performance, in violation of Minnesota Statutes section 617.241.   On August 26, 2004, he brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his right to be free from unreasonable search and seizure and excessive force in violation of the Fourth and Fourteenth Amendments.   Defendants now move for summary judgment.


**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) **(quoting Fed. R. Civ. P. 56(c)).** A fact is material only when its resolution affects the outcome of the case.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is genuine if the evidence is such that it could

cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

## II.  Plaintiff's § 1983 Claims

Pursuant to § 1983, any person who under color of state law deprives a United States citizen of the rights, privileges or immunities secured to them by the United States Constitution can be held liable in an action at law.  42 U.S.C. § 1983.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, the first task for any court considering a § 1983 claim is "to identify the specific constitutional right allegedly infringed."  Id. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

8

Plaintiff articulates three distinct constitutional violations, each emanating from the Fourth Amendment. First, plaintiff argues that no probable cause existed to support the search warrant. Specifically, he argues that Deputies Stillman and Erickson did not sufficiently corroborate the information provided by Schleicher prior to Deputy Stillman inclusion of that information in the affidavit to establish probable cause. Second, plaintiff argues that his right to be free from unreasonable search and seizure was violated when the deputies improperly executed the knock-and-announce warrant. Third, plaintiff argues that he was subjected to excessive force during the warrant's execution.

A.    **Favorable-Termination Rule**

Defendants summarily argue that all of plaintiff's claims should be dismissed pursuant to the "favorable-termination rule" established in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). <u>Figg v. Russell</u>, — F.3d —, 2006 WL 20546, *1 (8th Cir. 2006).[4] In <u>Heck</u>, the Supreme Court held that in order to recover damages for "harm

---

[4] Defendants also rely on <u>Malady v. Crunk</u> to argue that plaintiff's guilty plea effected a waiver of his right to challenge all of the issues presently before the court. <u>See</u> 902 F.2d 10, 11-12 (8th Cir. 1990). In <u>Malady</u>, the court held that a guilty plea is a defense to a § 1983 claim of arrest without probable cause. <u>Id.</u>; <u>see also</u> <u>Williams v. Schario</u>, 93 F.3d 527, 528-29 (8th Cir. 1996) (per curiam). However, plaintiff has not brought a claim for arrest without probable cause. Therefore, the court finds that <u>Malady</u> does not preclude resolution of plaintiff's § 1983 claims. <u>See</u> <u>Thurmond-Green v. Hodges</u>, 128 Fed. Appx. 551, 552 (8th Cir. 2005) (per curiam) (distinguishing <u>Malady</u> and <u>Schario</u> on similar grounds).

caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must first prove that the underlying conviction or sentence has been invalidated or reversed. See 512 U.S. at 486-87.  Absent such a showing, the court must inquire as to whether a favorable judgment on a plaintiff's § 1983 claim "would necessarily imply the invalidity of his conviction or sentence."  Id. at 487.  To determine whether a claim is Heck-barred, the court looks "'to the essence of the plaintiff's claims.'"  Portley-El v. Brill, 288 F.3d 1063, 1067 (8th Cir. 2002) (quoting Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996)). Due to doctrines such as independent source and inevitable discovery, it may be possible for a § 1983 plaintiff to challenge an unreasonable search even when the challenged search produced evidence that resulted in the conviction.  Heck, 512 U.S. at 487 n.7; Moore v. Sims, 200 F.3d 1170, 1171 (8th Cir. 2000) (per curiam); Whitmore v. Harrington, 204 F.3d 784, 785 (8th Cir. 2000) (per curiam).

As to plaintiff's probable cause claim, the court finds that such an unlawful search claim, if successful, would not necessarily invalidate his conviction due to the doctrine of inevitable discovery. See Heck, 512 U.S. at 487 n.7; Moore, 200 F.3d at 1171. As to plaintiff's excessive force claim, it is possible for an officer to use excessive force when executing a search warrant and engaging in an otherwise constitutional search of a home. See,

10

e.g., Robinson v. Doe, 272 F.3d 921, 923 (7th Cir. 2001); Sullivan v. Gagnier, 225 F.3d 161, 165 (2nd Cir. 2000); Simmons v. O'Brien, 77 F.3d 1093, 1097 (8th Cir. 1996).  The court finds that the same analysis would apply to an allegation that an officer improperly executes a knock-and-announce search warrant.  Accordingly, plaintiff's conviction would not necessarily be invalidated if he successfully challenged the manner in which the deputies executed the search warrant or restrained him while the search ensued. Therefore, dismissal without prejudice under Heck v. Humphrey is not warranted as to any of plaintiff's claims.

### B.   Qualified Immunity

Defendants move for summary judgment on grounds of qualified immunity.  Qualified immunity provides protection from civil liability to government agents who perform discretionary functions, so long as the challenged actions are objectively reasonable in light of clearly established legal principles.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Qualified immunity is generally a question of law for the court that should be decided as early as possible so as to shield officials from suit.  See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992).

In evaluating a claim of qualified immunity, the initial inquiry is whether the facts alleged show a violation of a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005).  Resolving the

11

constitutional questions prior to addressing the issue of qualified immunity "promotes clarity in the legal standards for official conduct." Wilson v. Layne, 526 U.S. 603, 609 (1999).  If the court determines that the facts, construed in the light most favorable to the injured party, do not establish a violation of a constitutional right, no further inquiry is necessary. Saucier, 533 U.S. at 201.

If the facts establish an alleged constitutional violation, then the court must determine whether the right was clearly established at the time of the violation. Id.; Craighead, 399 F.3d at 961.  A right is clearly established for purposes of qualified immunity if the contours of that right are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Wilson, 526 U.S. at 614-15 (quoting Anderson, 483 U.S. at 640).  In other words, in light of pre-existing law, "the unlawfulness must be apparent." Anderson, 483 U.S. at 640.  The dispositive inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201.

If a plaintiff sufficiently alleges a violation of a clearly established constitutional right, the plaintiff must further show that no genuine issue of material fact exists regarding whether a reasonable official would have known that his alleged actions violated that right. Mettler v. Whitridge, 165 F.3d 1197, 1202 (8th Cir. 1999).  This assures that the doctrine of qualified

immunity is applied in a manner that "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'"   <u>Walker v. City of Pine Bluff</u>, 414 F.3d 989, 992 (8th Cir. 2005) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)).

### 1.   Probable Cause Claim

Plaintiff argues that Deputies Stillman and Erickson violated his right to be free from unreasonable search and seizure by failing to sufficiently confirm the veracity of the information provided by Schleicher and including that information in Deputy Stillman's affidavit in support of the search warrant.   To protect people from an unreasonable search and seizure, the Fourth Amendment "requires a showing of probable cause to support a search warrant."   <u>United States v. Turner</u>, 431 F.3d 332, 336 (8th Cir. 2005).   A warrant is supported by probable cause if there is a "'fair probability that contraband or evidence of a crime will be found in the place to be searched.'"   <u>Id.</u>   (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 230 (1983)).   Whether probable cause exists is determined based on the totality of the circumstances and with a common-sense approach.   <u>United States v. Carter</u>, 413 F.3d 712, 714 (8th Cir. 2005).

Probable cause may be based on hearsay statements from reliable people and observations of trained law enforcement officers.   <u>Walden v. Carmack</u>, 156 F.3d 861, 870 (8th Cir. 1998).

Under Minnesota law, first-time citizen informants who have not been involved in crime are presumed reliable. State v. Ward, 580 N.W.2d 67, 71 (Minn. Ct. App. 1998). When information provided by a confidential informant provides the basis for probable cause, independent corroboration and evidence of past reliability are influential factors. Walden, 156 F.3d at 870. However, based on the circumstances, probable cause may exist even when an informant's tip has not been independently corroborated and the person has not previously served as an informant. See id. Further, even when there is doubt as to an informant's motives, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [a] tip to greater weight than might otherwise be the case." Gates, 462 U.S. at 234.

A presumption of validity attaches to an officer's affidavit in support of a search warrant. Franks v. Delaware, 438 U.S. 154, 171 (1978). The contents of the officer's affidavit must be truthful "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Mueller v. Tinkham, 162 F.3d 999, 1003 (8th Cir. 1998) (internal quotations omitted). To rebut this presumption, a challenge to the affidavit must contain specific allegations and proof as to an affiant's "deliberate falsehood" or "reckless disregard for the truth." Franks, 438 U.S. at 171.

Plaintiff argues that Deputies Stillman and Erickson did not sufficiently verify or corroborate the information provided by Schleicher prior to including that information in the affidavit.[5] According to plaintiff, Schleicher's prior sexual activity with Arndt and her creation of a screen name to document his attraction to minor females indicated that she had a perverse motivation that arose out of a personal vendetta. Specifically, plaintiff claims Deputies Stillman and Erickson should have authenticated the veracity of the printouts of the online conversations, searched the hard drive of Schleicher's computer and conducted a background check under Schleicher's maiden name.

As to Deputy Erickson, her only role in the investigation, prior to participating in the search warrant's execution, was to interview Schleicher and relay the information that she attained to Deputy Stillman. Plaintiff has not provided any legal authority to support a conclusion that insufficiently verifying the information provided by an informant, in and of itself, is a cognizable violation of a Fourth Amendment right. Accordingly, plaintiff has not alleged that Deputy Erickson violated a recognized constitutional right.

---

[5] Plaintiff also argues that his previous 1999 conviction and the results of a 1999 search warrant were stale and therefore too remote to support probable cause. However, the mere inclusion of dated information in an affidavit does not taint the additional recent information included therein. See United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 2005).

As to Deputy Stillman's inclusion of the information in his affidavit, plaintiff has not provided any evidence to indicate that Deputy Stillman included a "deliberate falsehood" in his affidavit or included any information "in reckless disregard for the truth." See Mueller, 162 F.3d at 1003.  Accordingly, plaintiff has not established that Deputy Stillman violated his Fourth Amendment right to be free from unreasonable search and seizure.  Further, even if plaintiff had set forth sufficient factual allegations to establish that a clearly established Fourth Amendment right was violated, Deputy Stillman would be protected by qualified immunity. Only when a warrant application is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable" will an officer lose qualified immunity.  Malley v. Briggs, 475 U.S. 335, 345 (1986); George v. City of St. Paul, 26 F.3d 55, 57 (8th Cir. 1994).  The court finds that it was objectively reasonable, based on a totality of the circumstances, for Deputy Stillman to rely on the information provided by Schleicher in applying for the search warrant.  Therefore, summary judgment in favor of defendants on plaintiff's probable cause claim is warranted.

### 2.   Knock-and-Announce Claim

Plaintiff argues that the destruction of his front door as a result of Deputy Stutz using a battering ram was an

16

unconstitutional execution of a knock-and-announce warrant.[6]  A "knock-and-announce" claim is analyzed under the reasonableness inquiry of the Fourth Amendment.  See Wilson v. Arkansas, 514 U.S. 927, 929 (1995); Doran v. Eckold, 409 F.3d 958, 963 (8th Cir. 2005) (en banc).  Reasonableness in this context is a "function of the facts" and must be evaluated under the totality of the circumstances.  United States v. Banks, 540 U.S. 31, 36 (2003). Whether an officer is justified in using force to enter a residence after knocking and announcing his presence and purpose "does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant." United States v. Goodson, 165 F.3d 610, 614 (8th Cir. 1999) (quoting United States v. Lucht, 18 F.3d 541, 549 (8th Cir. 1994)).

After an officer knocks and announces his presence, exigent circumstances, such as officer safety or destruction of evidence, may justify entry by force.  Banks, 540 U.S. at 38 (holding that fifteen to twenty seconds between a warrant knock and entry was sufficient when search involved easily disposable evidence); see also United States v. Nichols, 344 F.3d 793, 798 (8th Cir. 2004). The issue of exigent circumstances is a question of law.  Doran, 409 F.3d at 961.  An officer's burden to establish a "reasonable suspicion of exigent circumstances 'is not high.'"  Id. at 967

---

[6]  Plaintiff admits that he has no personal knowledge as to how many times the officers knocked, the manner in which they announced their presence or how long they waited prior to entry.

(quoting <u>Richards v. Wisconsin</u>, 520 U.S. 385, 394 (1997)).  Once an exigency has matured, officers need not await additional information and the exigent need to enter a residence "trumps a resident's interest in avoiding all property damage." <u>Banks</u>, 540 U.S. at 39 (citing <u>United States v. Ramirez</u>, 523 U.S. 65, 70-71 (1998)).  Whether a resident hears the officers knock or announce their presence or has sufficient time to answer the door is not relevant.  <u>Id.</u> at 39-40.  The relevant facts are those known to police at the time and the reasonableness inquiry must be judged from the "perspective of a reasonable officer on the scene." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989); <u>Banks</u>, 540 U.S. at 39.

In this case, Deputy Stutz used the battering ram within twenty to sixty seconds of Deputy Kurtz's warrant knock.  When there is not an immediate response to an officer's knock, a twenty-second wait can be sufficient when exigent circumstances are present.  See <u>United States v. Stropes</u>, 387 F.3d 766, 773 (8th Cir. 2004) (fifteen second delay); <u>United States v. Vesey</u>, 338 F.3d 913, 916 (8th Cir. 2003) (ten second delay); <u>United States v. Goodson</u>, 165 F.3d at 614 (twenty second delay); <u>United States v. Lucht</u>, 18 F.3d 541, 550 (8th Cir. 1994) (six to eight second delay).  The court must therefore determine whether exigent circumstances existed to warrant a forcible entry.

Defendants argue that concern for officer safety, potential destruction of computer evidence and the possibility that a

18

juvenile could be present created a situation where a forcible entry was reasonable. The court agrees. Based on a totality of the circumstances, the court finds that it was objectively reasonable for officers to forcibly enter Arndt's home following twenty seconds of no response.[7] Therefore, plaintiff has not alleged a violation of the Fourth Amendment. Further, even if plaintiff had established a violation of his right to be free from an unreasonable search and seizure, Deputies Kurtz and Stutz would nonetheless be protected by qualified immunity. The doctrine of qualified immunity addresses the concern that officers may make reasonable mistakes as to the manner in which legal doctrines apply to specific factual situations. Parks v. Pomeroy, 387 F.3d 949, 957 (8th Cir. 2004) (citing Saucier, 533 U.S. at 201.) The court finds that it would not have been apparent to a reasonable officer that forcibly entering a home after a twenty-second lack of response is unlawful when the basis of the warrant is the sadomasochistic torture of juvenile females and there is a concern that potential computer evidence could be destroyed. Therefore, summary judgment in favor of defendants on plaintiff's knock-and-announce claim is warranted.

---

[7] Plaintiff has provided no legal authority in support of his argument that the officers were required to try an unlocked door prior to forcibly entering through the front door. Therefore, the court declines to entertain that argument.

### 3.   Excessive Force Claim

Plaintiff claims that Deputy Johnson used excessive force while restraining him during the search.  As a general matter, an officer violates the Fourth Amendment when he uses excessive force to effect the apprehension or detention of a free citizen.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  Excessive force is that which is "'excessive under objective standards of reasonableness.'"  Wilson v. City of Des Moines, Ia., 293 F.3d 447, 450 (8th Cir. 2002) (quoting Saucier, 533 U.S. at 201-02).  When evaluating an officer's use of force, the court must pay "careful attention to the facts and circumstances of [the] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 20-22 (1968)).  The Supreme Court has made clear that "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving –

about the amount of force that is necessary in a particular situation." Id. at 396-97; see also Nelson v. County of Wright, 162 F.3d 986 (8th Cir. 1998).

Plaintiff alleges two instances in which Deputy Johnson used excessive force. First, he claims that he was grabbed from behind while being handcuffed, physically forced to the ground, a knee was placed on his upper back while his hands were cuffed and he remained on the ground for three to four minutes. (Arndt Dep. at 124-25.) Plaintiff also alleges that a gun was held to his temple while he was being handcuffed, although Deputy Johnson directly refutes that fact. (Johnson Aff. ¶ 11.) Second, he claims that his handcuffs were on too tight for approximately ninety minutes. (Arndt Dep. at 138.) The unequivocal flaw to plaintiff's argument is that not every push or shove violates the Fourth Amendment. See Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (citing Graham, 490 U.S. at 396). Further, a "de minimus injury is insufficient to support a finding of a constitutional violation." Id. at 1007. The court finds nothing excessive in the amount of force Deputy Johnson used to restrain plaintiff. Further, even if Deputy Johnson's actions amounted to a violation of plaintiff's constitutional rights, the court cannot say that any such right was clearly established at the time of plaintiff's arrest. See Parks, 387 F.3d at 956. Therefore, summary judgment in favor of defendants on plaintiff's excessive force claim is warranted.

21

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 24] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 27, 2006

s/David S. Doty
David S. Doty, Judge
United States District Court